CAREY & DANIS, LLC
8235 Forsyth, Suite 1100
St. Louis, MO 63105
Telephone: (314) 725-7700
Facsimile:     (314) 721-0905
e-mail:  mflannery@careydanis.com

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

**C 07 5461**

| | |
|---|---|
| JAMES PA, individually and on behalf of a class of all others similarly situated | No. _____ |
| Plaintiff, | |
| v. | **CLASS ACTION COMPLAINT** |
| KOREAN AIR LINES CO., LTD. and ASIANA AIRLINES, INC., | **JURY TRIAL DEMANDED** |
| Defendants. | |

Plaintiff, by and through the undersigned counsel, complains and alleges upon information and belief except as to those paragraphs applicable to the named Plaintiff, which are based on personal knowledge, as follows:

### DEFINITIONS

1.     "Air Transportation Services" means the transportation by air of cargo and/or passengers between the U.S. and Korea.

2.     "Class Period" means the period from January 1, 2000 to February 14, 2006.

47118.1

3.    "Fuel Surcharge" means a Surcharge levied by an airline upon Air Transportation Services ostensibly to compensate the airline for costs of fuel.

4.    "Surcharge" means a fee charged to ticket purchasers by an airline purportedly to compensate the airline for certain external costs.

## JURISDICTION AND VENUE

5.    The claims of Plaintiff and members of the Class for injuries sustained Defendants' violations of Section 1 of the Sherman Act, 15 U.S.C. § 1, are brought pursuant to Sections 4 and 16 of the Clayton Act, 15 U.S.C. §§ 15 and 26, to obtain injunctive relief and to recover treble damages and the costs of this suit, including reasonable attorneys' fees.

6.    This Court has original and federal jurisdiction over the Sherman Act claims asserted in this Complaint, pursuant to 28 U.S.C. §§ 1331, 1337, and Sections 4 and 16 of the Clayton Act, 15 U.S.C. §§ 15 and 26.

7.    Venue is proper in this judicial district pursuant to Sections 4(a) and 12 of the Clayton Act, 15 U.S.C. §§ 15 and 22, and 28 U.S.C. § 1391(b), (c) and (d), because during the Class Period Defendants resided, transacted business, were found, or had agents in this district, and a substantial part of the events giving rise to Plaintiff's claims occurred and a substantial portion of affected interstate trade and commerce described below has been carried out, in this district.

## NATURE OF THE ACTION

8.    This action arises from a conspiracy to fix, raise, maintain, and/or stabilize prices of Air Transportation Services by fixing the prices of passenger and cargo fares.

9.    Defendants and their co-conspirators acted in concert and conspired to artificially inflate the prices of Air Transportation Services by fixing the prices of the Air Transportation Service base rates and/or by fixing the price of Fuel Surcharges imposed thereon.

10.    The Defendants, together with their co-conspirators, participated in a conspiracy to fix or maintain certain charges built into the price for Air Transportation Services. Because of this unlawful conduct and conspiracy, Plaintiff and other members of the Class paid artificially inflated prices for Air Transportation Services. Plaintiff and other members of the Class purchased those services from Defendants and have been damaged thereby.

11.    Plaintiff brings this action to recover treble damages and injunctive relief for violations of Section 1 of the Sherman Act of 1890 ("Sherman Act"), 15 U.S.C. § 1, and pursuant to Sections 4 and 16 of the Clayton Act of 1914 ("Clayton Act"), 15 U.S.C. §§ 15 and 26.

12.    Plaintiff brings this action on behalf of a Class (the "Class"), as follows:

> All persons and entities that purchased Air Transportation Services that included at least one flight segment between the United States and the Republic of Korea from Defendants or any predecessor, subsidiary, or affiliate or business partner of each, at any time during the period from January 1, 2000 to February 14, 2006 (the "Class"). Excluded from the Class are all federal, state, governmental and national entities, the Court and its staff, and Defendants, their co-conspirators and their predecessors, subsidiaries, affiliates, and business partners.

13.    At all relevant times herein, Defendants and their co-conspirators were airlines that conducted and sold Air Transportation Services, and charged Fuel Surcharges on those Services, to airline passengers traveling, and to customers shipping cargo, between the United States and Korea.

47118.1

3

14.    As further alleged herein, during at least the period January 1, 2000 through February 14, 2006 (the "Class Period"), Defendants and their co-conspirators agreed, combined, and/or conspired with each other to fix, raise, maintain, and/or stabilize the prices of Air Transportation Services, including by fixing the price of Fuel Surcharges thereon. As a result of Defendants' unlawful conduct and conspiracy, Plaintiff and the other members of the Class paid artificially high prices for Air Transportation Services and Surcharges thereon, and have been damaged thereby.

## DEFENDANTS

15.    Defendant Korean Air Lines Co., Ltd. ("Korean Air") is a corporation organized and existing under the laws of the Republic of Korea ("Korea") with its principal place of business in Seoul, Korea. During the Class Period, Defendant Korean Air was engaged in the business of providing Air Transportation Services for passengers and cargo in the United States and elsewhere, including this division of this district, particularly direct flights between Las Vegas McCarran International Airport and Korea.

16.    Defendant Asiana Airlines, Inc. ("Asiana") is a foreign airline headquartered in "Asiana Town," Kangseo P.O. Box 98#47, Osae-Dong, Kangseo-Ku Seoul, Korea. Asiana conducts Air Transportation Services throughout the world, including this division of this district, particularly indirect flights between Las Vegas McCarran International Airport and Korea.

## UNNAMED CO-CONSPIRATORS

17.    On information and belief, at all relevant times, other airlines, corporations, individuals or other entities willingly conspired with Korean Air and Asiana in their unlawful

restraint of trade. All allegations herein against Korean Air and Asiana are also alleged against these unnamed co-conspirators as though set forth at length.

## AGENTS

18.    The acts alleged to have been done by Defendants were authorized, ordered, or performed by their directors, officers, managers, agents, employees, or representatives while actively engaged in the management of Defendants' affairs.

## PLAINTIFF

19.    Plaintiff James Pa ("Plaintiff") is an individual resident of St. Louis, Missouri. During the Class Period, Plaintiff purchased Air Transportation Services from one or more Defendants, including Korean Air Lines, and has suffered pecuniary injury as a result of the antitrust violations alleged herein.

## FACTUAL ALLEGATIONS

### Interstate and International Trade and Commerce

20.    Throughout the Class Period, there was a continuous and uninterrupted flow of Air Transportation Services in interstate and international commerce into and out of the United States and Korea, affecting trade therein.

21.    Korean Air is the largest passenger carrier from the United States to Korea, and averages more than $250 million per year on those flights.

22.    Korean Air is the world's largest commercial freight carrier (excluding package shipping companies), in terms of shipment volume, according to the International Air Transport Association. During the conspiracy, it contributed to United States-related cargo revenues that have been reported to be a total of more than $1 billion annually.

47118.1

23.     Asiana is the second-largest passenger carrier from the United States to Korea, and is Korean Air's main rival on those routes.

24.     Defendants' unlawful activities, as described herein, took place within and affected the flow of interstate commerce to Air Transportation Service customers located in states other than where Defendants are located, as well as throughout the world, and had a direct, substantial and reasonably foreseeable effect upon commerce in the United States and elsewhere worldwide.

### Defendants' Concerted Price Increases

25.     Generally, Surcharges are a feature of the global Air Transportation Services market by which airlines charge extra fees to their customers, above and beyond basic transportation rate charges, purportedly to defray certain external costs of the carriers.

26.     Beginning on or about January 1, 2000, Defendants and their co-conspirators commenced a series of meetings, conversations, and other communications during which they agreed to act in concert with one another in setting the rates to be charged for Air Transportation Services, including the rates of Fuel Surcharges.

27.     Communications between Defendants, and between Defendants and their co-conspirators, preceded the Air Transportation Service rates and Fuel Surcharge increases by Defendants and their co-conspirators.

28.     As a result of such meetings, conversations, and other communications, Defendants and their co-conspirators agreed to and in fact did increase prices of Air Transportation Services.  For example, Korean Air and its co-conspirators agreed to increase the air cargo Fuel Surcharge over time from ten cents per kilogram to as high as sixty cents for each kilogram of cargo shipped from the United States.

47118.1

6

29.     Defendants and their co-conspirators also engaged in meetings, conversations, and other communications to enforce their agreed-upon rates and Fuel Surcharge prices.

### GOVERNMENT PROCEEDINGS

30.     The U.S. Department of Justice ("DOJ") filed a criminal complaint on August 1, 2007, charging Korean Air with participating in a conspiracy to fix fares charged to passengers and certain travel agents, and for cargo transportation, on flights between the United States and Korea.

31.     The DOJ's complaint states that Korean Air had reached an agreement with a corporate co-conspirator and other individuals to fix these passenger fares.  A separate DOJ document calls this corporate co-conspirator a Korean Air "rival."

32.     The DOJ's complaint also states that Korean Air agreed with corporate and individual co-conspirators on rates charged to customers in the United States and elsewhere for international air cargo shipments.  A separate DOJ document refers to these co-conspirators as Korean Air's "air cargo competitors."

33.     On August 1, 2007 Korean Air agreed to plead guilty and pay a $300 million criminal fine for its role in the conspiracy to fix the prices of Air Transportation Services.

34.     Korean Air admitted its wrongdoing.  Korean Air attorney Ahn Yong-Seok confirmed the plea agreement and announced that Korean Air "apologizes to shareholders and customers for causing the trouble."  Yong-Seok also stated that Korean Air is "intensifying internal monitoring and education to prevent a repeat of the wrongdoing."

35.     Under the plea agreement, Korean Air has agreed to cooperate with the DOJ's ongoing investigation.

47118.1

## FRAUDULENT CONCEALMENT

36.    Throughout the relevant period, Defendants and their co-conspirators affirmatively and fraudulently concealed their unlawful conduct against Plaintiff and the Class.

37.    Plaintiff and the members of the Class did not discover, and could not discover through the exercise of reasonable diligence, that Defendants were violating the antitrust laws as alleged herein until shortly before this litigation was commenced.  Nor could Plaintiff and the members of the Class have discovered the violations earlier than that time because Defendants and their co-conspirators conducted their conspiracy in secret, concealed the nature of their unlawful conduct and acts in furtherance thereof, and fraudulently concealed their activities through various other means and methods designed to avoid detection.  The conspiracy was by its nature self-concealing.

38.    Only on or about August 1, 2007, when the DOJ announced Korean Air's guilty pleas and criminal fines with regard to its price fixing of Air Transportation Services, was the existence of the conspiracy disclosed to the public.  Plaintiff and members of the Class could not have discovered the unlawful conduct at an earlier date through the exercise of reasonable diligence because of Defendants' active and purposeful concealment of their unlawful activities.

39.    Defendants and their co-conspirators engaged in a successful, illegal price-fixing conspiracy with respect to Air Transportation Services, as well as to Fuel Surcharges, which they affirmatively concealed in at least the following respects:

    a.    by agreeing among themselves not to discuss publicly, or otherwise reveal, the nature and substance of the acts and communications in furtherance of their illegal scheme;

b.     by engaging in secret meetings, telephone calls, and other communications in order to further their illicit cartel; and/or

c.     by giving false and pretextual reasons for their pricing of Air Transportation Service rates, and for the increases in those prices during the relevant period, and by falsely describing such pricing and increases as being the result of external costs rather than collusion.

40.    As a result of Defendants' fraudulent concealment of their conspiracy, Plaintiff and the members of the Class assert the tolling of any applicable statue of limitations affecting the rights of action of Plaintiff and the members of the Class.

## COUNT I

### VIOLATIONS OF THE SHERMAN ACT

41.    Plaintiff incorporates by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

### Class Action Allegations

42.    Plaintiff brings this action on his own behalf and as a class action pursuant to Federal Rules of Civil Procedure 23(a) and 23(b)(3) on behalf of the following Class:

> All persons and entities that purchased Air Transportation Services that included at least one flight segment between the United States and the Republic of Korea from Defendants or any predecessor, subsidiary, or affiliate or business partner of each, at any time during the period from January 1, 2000 to February 14, 2006 (the "Class"). Excluded from the Class are all federal, state, governmental and national entities, the Court and its staff, and Defendants, their co-conspirators and their predecessors, subsidiaries, affiliates, and business partners.

47118.1

9

43.    Because such information is in the exclusive control of Defendants, Plaintiff does not know the exact number of members of the Class. Due to the nature of the trade and commerce involved, however, Plaintiff believes that Class members number at least in the thousands and are sufficiently numerous and geographically dispersed throughout the United States and the world so that joinder of all Class members is impracticable.

44.    There are questions of law or fact common to the Class, including:

a.    whether Defendants engaged in a combination or conspiracy with their co-conspirators to fix, raise, maintain, and/or stabilize Air Transportation Services by fixing the price of Surcharges on such Services;

b.    whether Defendants directly or indirectly fixed prices of Air Transportation Services;

c.    the duration of the conspiracy alleged in this Complaint and the nature and character of the acts performed by Defendants in furtherance of the conspiracy;

d.    whether Defendants violated Section 1 of the Sherman Act;

e.    the nature and character of the acts performed by Defendants in furtherance of the conspiracy;

f.    whether the conduct of Defendants, as alleged in this Complaint, caused injury to the businesses or property of Plaintiff and the members of the Class;

g.    the effect of Defendants' conspiracy on the Air Transportation Services and/or Fuel Surcharge prices charged during the Class Period;

h.    whether Defendants fraudulently concealed the alleged conspiracy so as to equitably toll any applicable statute of limitations;

   i.  whether damages can be shown on a class-wide basis;

   j.  the appropriate measure of damages sustained by Plaintiff and other members of the Class; and

   k.  whether the Class is entitled to injunctive relief to prevent the continuation or furtherance of the violations of Section 1 of the Sherman Act alleged.

 45. Plaintiff is a member of the Class, having purchased Air Transportation Services from one or more of the Defendants.

 46. The prosecution of separate actions by individual members of the Class would create a risk of inconsistent or varying adjudications, establishing incompatible standards of conduct for Defendants.

 47. A class action is superior to other available methods for the fair and efficient adjudication of this controversy.

   a.  The Class is readily definable and one for which records should exist in the files of Defendants.

   b.  Prosecution as a class action will eliminate the possibility of repetitious litigation.

   c.  Treatment as a class action will permit a large number of similarly situated persons to adjudicate their common claims in a single forum simultaneously, efficiently and without duplication of effort and expense that numerous individual actions would engender.

   d.  Class treatment will permit the adjudication of relatively small claims by many Class members who otherwise could not afford to litigate an antitrust claim such as is asserted in this Complaint on an individual basis.

e.       This class action presents no difficulties of management that would preclude its maintenance as a class action.

48.      Plaintiff's claims are typical of the claims of the Class members.

49.      Plaintiff will fairly and adequately protect the interests of the Class. Plaintiff's interests are coincident with and not antagonistic to those of other members of the Class.

50.      Plaintiff is represented by counsel competent and experienced in the prosecution of antitrust and class action litigation.

51.      The questions of law and fact common to the members of the Class predominate over any questions affecting only individual members.

## Violations Alleged

52.      During the Class Period, Defendants and their co-conspirators engaged in a continuing agreement, understanding, and conspiracy in restraint of trade to artificially raise, fix, maintain, and/or stabilize the prices of Air Transportation Services by fixing the price of Air Transportation Service rates, including by fixing the price of Fuel Surcharges thereon, in violation of Section 1 of the Sherman Act, 15 U.S.C. § 1.

53.      In formulating and effectuating the alleged contract, combination, or conspiracy, Defendants and their co-conspirators engaged in anti-competitive activities, the purpose of which was to artificially raise, fix, maintain, and/or stabilize the prices of Air Transportation Services by fixing the price of Air Transportation Service rates, including by fixing the price of Fuel Surcharges thereon. These activities included the following:

a.       agreeing to charge prices for Fuel Surcharges at certain levels and otherwise to fix, raise, maintain, and/or stabilize the prices of Air Transportation Services; and

b.    charging Fuel Surcharges at agreed upon levels, thereby fixing Air Transportation Services at the agreed-upon rates.

54.    During the Class Period, Plaintiff and members of the Class purchased Air Transportation Services directly from one or more Defendants (or their respective agents, predecessors, subsidiaries, affiliates, and/or business partners).

55.    The illegal combination and conspiracy alleged herein had the following effects, among others:

a.    Price competition on Air Transportation Service rates, by and including increases in the price of Fuel Surcharges, was restrained, suppressed or eliminated;

b.    Prices charged by Defendants for Air Transportation Services were fixed, raised, maintained, and/or stabilized at artificially high, non-competitive levels by fixing the price of Air Transportation Service rates, including by fixing the price of Fuel Surcharges thereon; and

c.    Prices paid by Plaintiff and members of the Class for Air Transportation Services charged by Defendants have been fixed, raised, maintained, and/or stabilized at artificially high, non-competitive levels by the fixing of the prices of Fuel Surcharges.

56.    Defendants' anticompetitive activities and their effects are in violation of the Sherman Act.

57.    During the Class Period, Defendants sold Air Transportation Services in a continuous and uninterrupted flow of interstate and foreign commerce. Defendants received payment for such products across state and national boundaries. Defendants' activities, and the sale of their services, have both taken place within, and have had a substantial anticompetitive effect upon, interstate commerce within the United States and foreign commerce.

58.    Plaintiff and members of the Class seek injunctive relief, and treble damages, and any such other relief that the Court deems necessary and appropriate.

### Injury, Loss and Damage to Plaintiff and the Class

59.    The combination and conspiracy alleged herein had the following effects, among others:

a.    The prices charged by Defendants to, and paid by, Plaintiff and members of the Class for Air Transportation Services were fixed, raised, maintained and/or stabilized at artificially high and non-competitive levels;

b.    Plaintiff and members of the Class have been deprived of free and open competition in the purchase of Air Transportation Services in the United States and worldwide;

c.    Plaintiff and members of the Class have been required to pay more for Air Transportation Services in the United States and worldwide than they would have paid in a competitive marketplace absent Defendants' price-fixing conspiracy; and

d.    Competition in the sale of Air Transportation Services has been restrained, suppressed or eliminated.

60.    During the Class Period, Defendants' Air Transportation Services conspiracy as described herein caused Plaintiff and the members of the Class to pay artificially inflated prices for Air Transportation Services that they would have not paid absent such violations.  As a result, Plaintiff and the members of the Class have been injured and damaged in their business and/or property in an amount to be determined according to proof.

61.    As a direct and proximate result of Defendants' illegal conspiracy, Plaintiff and the members of the Class have been injured and financially damaged in their respective businesses

and/or property, in that they have paid artificially inflated prices during the Class Period that they would not have paid in the absence of the illegal conspiracy.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays that:

A.     The Court determine that this action may be maintained as a class action under Rule 23(a) and (b)(3) of the Federal Rules of Civil Procedure and direct that reasonable notice of this action, as provided by Rule 23(c)(2) of the Federal Rules of Civil Procedure, be given members of the Class;

B.     The Court adjudge and decree that the contract, combination and conspiracy alleged herein is a *per se* unreasonable restraint of trade in violation of Section 1 of the Sherman Act;

C.     The Court permit Plaintiff to amend the present Complaint as discovery may disclose further details of this conspiracy in parties, nature, substance, or extent;

D.     The Court award Plaintiff and the Class attorneys' fees and costs, and pre-judgment and post-judgment interest as permitted by law;

E.     The Court award Plaintiff and the Class such other and further relief as may be deemed necessary and appropriate.

F.     Judgment be entered against Defendants, jointly and severally, in favor of Plaintiff and the Class for treble damages determined to have been sustained by them by virtue of Defendants' violations of the Sherman Act, as allowed by law; and

G.     Defendants and their co-conspirators, and their respective successors, assigns, parents, subsidiaries, affiliates and transferees, and their respective officers, directors, agents and

47118.1

employees, and all other persons acting or claiming to act on behalf of Defendants or their co-conspirators, or in concert with them, be permanently enjoined and restrained from, in any manner, directly or indirectly, continuing, maintaining or renewing the combinations, conspiracy, agreement, understanding or concert of action, or adopting any practice, plan, program or design having a similar purpose or effect in restraining competition.

## JURY TRIAL DEMANDED

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff demands a trial by jury of the Sherman Act claims and any other claims so triable asserted in this Complaint.

Dated: October 24, 2007                    Respectfully submitted,

Michael J. Flannery
CAREY & DANIS, LLC
8235 Forsyth, Suite 1100
St. Louis, MO 63105
Phone: (314) 725-7700
FAX:   (314) 721-0905
e-mail: mflannery@careydanis.com

*Attorneys for Plaintiff*

16

## SCHEDULE A - RELATED CASES

Hee Ho Chung, et al., v. Korean Air Lines Co., Ltd., et al., C.A. No. 3:07 -3985

Hwa Ja Chung v. Korean Air Lines Co., Ltd., C.A. No. 3:07-4016

Ben Lee v. Korean Air Lines Co., Ltd., C.A. No. 3:07-4085

Yoon S. Chang v. Korean Air Lines Co., Ltd., et al., C.A. No. 3:07-4244

Kirby K. Kim v. Korean Air Lines Co., Ltd., C.A. No. 3:07-4245

Scott McLean v. Korean Air Lines Co., Ltd., et al., C.A. No. 3:07-4297

Martin Kaufman v. Korean Air Lines Co., Ltd., et al., C.A. No. 3:07-4349

Kaz Fujita v. Korean Air Lines Co., Ltd., et al., C.A. No. 3:07-4489

Amy Bricker v. Korean Air Lines Co., Ltd., et al., .C.A. No. 3:07-4508

Michael Lee v. Korean Air Lines Co., Ltd., et al., C.A. No. 3:07-4509

47676.1